UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FASTENER DIMENSIONS, INC., DARRYL HINKLE, DARRYL HINKLE as TRUSTEE of FASTENER DIMENSIONS, INC. PROFIT SHARING PLAN, and KATHLEEN HINKLE,

Plaintiffs,

-v-

MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY, MASSMUTUAL HOLDING LLC, MML INVESTORS SERVICES, LLC, FIFTH AVENUE FINANCIAL, COWAN FINANCAL GROUP, STERLING TRUST, EQUITY TRUST COMPANY, DANIEL TUMMINIA, MICHAEL FEUER, DENNIS MANNARINO, MASSMUTUAL CONTRACTING CORP., CYPRESS LAWN CARE, J&D ITALIAN SPECIALTY MEATS, ESTATE OF JANICE BOHA, and DOES 1-10,

Defendants.

12 Civ. 8918 (DLC)

INNA IPPOLITIOV, individually and representative of the class comprised of employees of Fastener Dimensions Inc. who were intended to be beneficiaries of said employer's pension and/or profit sharing plans,

Plaintiff,

-v-

FASTENER DIMENSIONS, INC., DANIEL TUMMINIA, MICHAEL FEUER, DARRYL HINKLE, DENNIS MANNARINO, MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY, MASSACHUSETTS MUTUAL FINANCIAL GROUP, STERLING TRUST COMPANY, "JOHN DOES" 1 through 10, and "JANE DOES" 1 through 10,

Defendants.

13 Civ. 4782 (DLC)

OPINION AND ORDER

DENISE COTE, District Judge:

These consolidated cases concern the mismanagement of a retirement fund created for the benefit of the employees of Fastener Dimensions Inc. Before the Court are October 11, 2013 motions to dismiss the Amended Complaint in Ippolitov v. Fastener Dimensions, Inc., No. 13 Civ. 4782 (DLC), filed by two groups of defendants: Massachusetts Mutual Life Insurance Company and MassMutual Financial Group (collectively, "MassMutual") and Fastener Dimensions, Inc. ("Fastener") and Darryl Hinkle ("Hinkle"). For the reasons stated below, MassMutual's motion is granted in its entirety, while the motion by Fastener and Hinkle is granted in part.

BACKGROUND

Fastener is a New York corporation that supplies fasteners and hardware for military aircraft, particularly helicopters. In 1992, Fastener established two pension and profit-sharing plans for its employees, which were eventually merged into one plan (the "Plan"). In 2000 or 2001, Hinkle, Fastener's president, hired his close personal friend Daniel Tumminia to manage the Plan and its life insurance policies and investments. In that capacity, the Amended Complaint alleges, Tumminia was given "complete control and discretion over Fastener's funds, life

insurance policies, and investment accounts by Hinkle and Fastener." This proved to be a bad decision.

Over the course of the next six years, Tumminia, acting with co-conspirators Michael Feuer, Dennis Mannarino, and Janice Boha, stole roughly $3 million from the Plan. Tumminia, Feuer, and Mannarino were indicted by the U.S. Attorney's Office for the Distirct of New Jersey, and each pled guilty to conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349.[1] Among other things, Tumminia created a sham corporation called MassMutual Contracting Corp. and used it to deposit checks from Fastener that were made out to "MassMutual." He also took out loans on Plan insurance policies, allowed many policies to lapse, and made "substantial out of the ordinary withdrawals" from certain Plan investment accounts. Fastener and Hinkle failed to notice this theft and allegedly continued to assure their employees that the Plan was well-managed and that their pension benefits were "safe."

Fastener, Hinkle (acting both individually and as trustee of the Plan), and his wife Kathleen Hinkle filed the first of the above-captioned actions in this district on December 7, 2012. Fastener v. MassMutual, No. 12 Civ. 8918 (DLC) (the "Fastener Action"). The Fastener Action included a variety of state common law claims as well as claims under the Racketeer Influenced and

[1] As Fastener's controller, Boha allegedly had responsibility for the company's finances. She died in September 2012.

Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968 ("RICO"). These were brought against the active participants in the conspiracy (Tumminia, Feuer, Mannarino, and John Boha, as executor of Janice Boha's estate) and certain companies they controlled (MassMutual Contracting Corp., Cypress Lawn Care, and J&D Italian Specialty Meats) as well three sets of institutions: MassMutual; Fifth Avenue Financial and Cowan Financial Group (the "Cowan Defendants"); and Sterling Trust and Equity Trust Company (the "Trust Defendants").

Plaintiff Inna Ippolitov filed the second of the above-captioned actions, Ippolitov v. Fastener Dimensions, No. 13 Civ. 4782 (DLC) (the "Ippolitov Action"), on April 30, 2013, in the Eastern District of New York. Ippolitov brought suit on behalf of herself and as representative of a purported class composed of beneficiaries of the Plan, and brought claims similar to those advanced in the Fastener Action under RICO and state common law, as well as claims under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq., ("ERISA"). On June 24, MassMutual filed a motion to transfer the Ippolitov Action to this district, arguing that it was closely related to the Fastener Action. The transfer motion was opposed by Hinkle and Fastener. Ippolitov failed to respond. On July 10, 2013, the transfer motion was granted, and this Court accepted the Ippolitov Action as related to the Fastener Action.

Meanwhile, three sets of defendants in the Fastener Action (MassMutual, the Cowan Defendants, and the Trust Defendants) had filed motions to dismiss, which the Court granted in part at an initial pretrial conference on July 12 and in subsequent Orders of July 15 and August 1. Fastener thereafter amended its complaint to conform with the Court's rulings.

At a conference on August 23 and in an Order of August 27, the Court directed Ippolitov to amend her complaint in response to the arguments made in the three motions to dismiss in the Fastener Action and the Court's rulings on those motions. Ippolitov was informed that she would have no further opportunity to amend. Ippolitov filed her Amended Complaint on September 3.

Ippolitov's Amended Complaint contains fifteen counts. As to MassMutual, the Amended Complaint alleges a breach of fiduciary duty in violation of ERISA, as well as ten state common-law claims: fraud, aiding and abetting fraud, conversion, breach of fiduciary duty, civil conspiracy, unjust enrichment, negligent supervision, negligent retention, negligent misrepresentation, and accounting. As to Fastener and Hinkle, the Amended Complaint also contains an ERISA claim, as well as claims for common-law breach of fiduciary duty, negligent supervision, negligent retention, and accounting.

MassMutual filed a motion to dismiss on October 11, as did Fastener and Hinkle. These two motions were opposed on November 1 and became fully submitted on November 15.

DISCUSSION

To survive a motion to dismiss under Fed.R.Civ.P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted). Applying this plausibility standard is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679. When considering a motion to dismiss, a trial court must "accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor." LaFaro v. New York Cardiothoracic Group, PLLC, 570 F.3d 471, 475 (2d Cir. 2009). A complaint must do more, however, than offer "naked assertions devoid of further factual enhancement," and a court is not "bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 556 U.S. at 678.

I. ERISA Claims

In furtherance of its general aim of protecting employee benefit and pension plans, ERISA imposes "certain general fiduciary duties applicable to the management" of such plans.

Varity Corp. v. Howe, 516 U.S. 489, 496 (1996). To state a claim for breach of the fiduciary duties imposed by ERISA, a plaintiff must allege facts that, if proven, would show that "the defendant acted as a fiduciary, breached its fiduciary duty, and thereby caused a loss to the plan at issue." Pension Ben. Guar. Corp. v. Morgan Stanley Inv. Management Inc., 712 F.3d 705, 730 (2d Cir. 2013) (citing 29 U.S.C. § 1109(a)).

In defining which entities qualify as fiduciaries, ERISA provides that

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, . . . or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

ERISA § 3(21)(A); 29 U.S.C. § 1002(21)(A). ERISA thus "defines 'fiduciary' not in terms of formal trusteeship, but in functional terms of control and authority over the plan." Mertens v. Hewitt Assocs., 508 U.S. 248, 262 (1993).

An ERISA fiduciary must discharge its duties with respect to a plan "solely in the interest of the participants and beneficiaries," 29 U.S.C. § 1104(a)(1), and "with the care, skill, prudence, and diligence under the circumstances then prevailing." Id. at § 1104(a)(1)(B). These duties are to be measured by reference to an objective "prudent man" standard. Pension Ben. Guar. Corp., 712 F.3d at 730. The basic touchstone

for the fiduciary responsibility under ERISA is the "duty of loyalty to guarantee beneficiaries' interests." Pegram v. Herdrich, 530 U.S. 211, 224 (2000).

A. MassMutual

The Amended Complaint does not sufficiently allege that MassMutual was a fiduciary of the Plan within the meaning of ERISA. The only factual allegation in the Amended Complaint that bears on MassMutual's status is the contention that MassMutual sold insurance policies to the Plan, but this type of activity plainly does not qualify as discretionary authority over the management of the Plan or authority over the disposition of the Plan's assets. See Cotton v. Mass. Mut. Life Ins. Co., 402 F.3d 1267, 1279 (11th Cir. 2005) ("Cases holding that insurers like Mass Mutual are not ERISA fiduciaries are numerous."). Ippolitov alleges, parroting ERISA's definition of fiduciary, that MassMutual exercised discretionary authority and control over the Plan, but legal conclusions of this sort, utterly unsupported by factual allegations, are insufficient to withstand a motion to dismiss. Iqbal, 662 U.S. at 679.

Ippolitov also implies that MassMutual's relationship with Tumminia made it a fiduciary under a respondeat superior theory, alleging, for instance, that Tumminia was MassMutual's "agent" and that he "performed his duties during the course and within the scope of his employment" with MassMutual. There is currently

a split among circuits as to whether respondeat superior liability exists under ERISA, although the Second Circuit has not yet addressed the issue. See In re Bank of America Corp. Sec. Derivative, and ERISA Litig., 756 F. Supp. 2d 330, 346-47 (S.D.N.Y. 2010) (collecting cases). Even circuits that do recognize respondeat superior liability require that the employer have "'actively and knowingly' participated in the agent's breach." Bannistor v. Ullman, 287 F.3d 394, 408 (5th Cir. 2002). Ippolitov makes no such allegation here. Indeed, the Amended Complaint alleges that Tumminia stole premiums intended for MassMutual, making MassMutual a victim of his fraud rather than a knowing and active participant.

Moreover, other than the repeated allegation that Tumminia was "employed by and was an agent of" MassMutual, the Amended Complaint contains no specific factual allegations supporting its respondeat superior theory. Indeed, the complaint alleges that Fastener and Hinkle, not MassMutual, hired Tumminia and granted him the authority to control the Plan's assets and manage its funds.

B. Fastener and Hinkle

The Amended Complaint does, however, state a claim for breach of fiduciary duty under ERISA as to Fastener and Hinkle. Fastener and Hinkle were fiduciaries under ERISA, as they exercised discretionary control over the Plan. Hinkle was the

named trustee of the Plan and, along with Fastener, is alleged to have made important decisions regarding its management, including the decision to hire Tumminia. Neither Fastener nor Hinkle contest that they were ERISA fiduciaries. Fastener argues primarily that the Amended Complaint does not adequately allege breach. ERISA provides, however, that

> a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan . . . if, by his failure to comply with section 1104(a)(1) of this title in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach.

29 U.S.C. § 1105(a)(2). The Second Circuit has characterized this provision as providing "that a fiduciary is liable if the fiduciary's failure to exercise reasonable care leads to a co-fiduciary's breach." Smith v. Local 819 I.B.T. Pension Plan, 291 F.3d 236, 241 (2d Cir. 2002).

The Amended Complaint alleges that Hinkle hired Tumminia to manage the Plan and its investments and that Tumminia's theft continued unabated and undetected for six years. It can hardly be denied that Hinkle and Fastener thus failed to exercise "the care, skill, prudence, and diligence . . . that a prudent man acting in a like capacity and familiar with such matters would use," 29 U.S.C. § 1104(a)(1)(B), or that this failure enabled Tumminia's own breach. See 29 C.F.R. § 2509.75-8, at FR-17 ("At reasonable intervals the performance of trustees and other

fiduciaries should be reviewed by the appointing fiduciary . . . .").

Hinkle and Fastener argue that Ippolitov's complaint must be dismissed because the damages she seeks are not available under ERISA. Section 502(a)(2) of ERISA, 29 U.S.C. § 1132(a)(2), allows suits by plan participants or beneficiaries for breaches of fiduciary duty under § 409 of ERISA, 29 U.S.C. § 1109. That section, however, only requires fiduciaries to "make good to such plan any losses to the plan" resulting from each such breach, a requirement that the Supreme Court has interpreted as limiting the availability of individual damages for breaches of fiduciary duty under ERISA. See Mass. Mutual Life Ins. Co. v. Russell, 473 U.S. 134, 140 (1985) (citation omitted).

Nevertheless, a plan participant may still bring suit for damages under § 502(a)(2) when the alleged breach "harmed all the participants" in a plan rather than "only an individual plaintiff." Coan v. Kaufman, 457 F.3d 250, 259 (2d Cir. 2006). A plaintiff is also required to bring suit "in a representative capacity on behalf of the plan." Id. (citation omitted). While ERISA itself does not mandate a particular procedure by which this should be achieved, the Second Circuit has expressed approval for the use of either class actions or joinder to accomplish the necessary representativeness: "[A]lthough plan participants need not always comply with Rule 23 to act as a

representative of other plan participants or beneficiaries, those who do will likely be proceeding in a 'representative capacity' properly for purposes of section 502(a)(2)." Id. at 261.

Ippolitov's suit meets these requirements. Ippolitov purports to represent a class composed of the beneficiaries of the Plan. Moreover, Ippolitov does not allege that she suffered any individualized financial loss thanks to defendants' breaches, but rather that funds were stolen from the Plan as a whole, injuring all its participants.

Fastener and Hinkle also argue that Ippolitov's suit should be dismissed as not ripe. Ripeness, which is both a constitutional and prudential doctrine, "prevents a federal court from entangling itself in abstract disagreements over matters that are premature for review because the injury is merely speculative and may never occur." Ross v. Bank of America, N.A., 524 F.3d 217, 226 (2d Cir. 2008) (citation omitted). The prudential prong of ripeness allows a court to decide "that the case will be better decided later and that the parties will not have constitutional rights undermined by the delay." Id. (citation omitted).

Ippoitov and the rest of the class have of course already suffered the injury of which they complain; it is in no sense hypothetical or "speculative." Hinkle and Fastener nevertheless argue that Ippolitov's suit is not ripe because it is in some

sense contingent on the outcome of the Fastener Action, which if successful, they argue, would afford Ippolitov all the relief to which she and the class are entitled. Hinkle and Fastener here rely on In re Facebook, Inc. IPO Securities and Derivative Litig., 922 F. Supp. 2d 445 (S.D.N.Y. 2013), in which the court dismissed as unripe derivative claims in which shareholders alleged damages to Facebook based on its defense of a class action suit against it. Id. at 473-75. The court in In re Facebook, however, relied on the idea that where the harms at issue "hinge entirely on the outcome of another pending action," derivative claims are not ripe until that action is resolved. Id. at 474.

Here, by contrast, the harms have already occurred, and the Fastener Action is alleged to be a potential cure for those harms, rather than their cause. Nor have Fastener and Hinkle, in prosecuting the Fastener Action, made the argument that they themselves are liable to the Plan for their own breaches of fiduciary duties to the Plan; to the extent that argument has merit, the Plan participants are well-served by Ippolitov's ability to make it. Moreover, given that the two actions are currently consolidated before this Court, there would be little benefit to forcing Ippolitov to await the result of the Fastener Action before seeking to hold Fastener and Hinkle liable for any

portion of the Plan's losses that are not recovered from the defendants in the Fastener Action.

II. State Law Claims

Ippolitov also advances a variety of state law claims against MassMutual, Fastener, and Hinkle. All of these are preempted by ERISA. ERISA features "expansive pre-emption provisions, which are intended to ensure that employee benefit plan regulation would be exclusively a federal concern." Aetna Health Inc. v. Davila, 542 U.S. 200, 208 (2004) (citation omitted). ERISA also includes "an integrated system of procedures for enforcement." Russell, 473 U.S. at 147 (citation omitted). "Therefore, any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." Davila, 542 U.S. at 209. In other words, state laws that "provide an alternative cause of action to employees to collect benefits protected by ERISA, refer specifically to ERISA plans and apply solely to them, or interfere with the calculation of benefits owed to an employee" have been held to be preempted. Stevenson v. Bank of N.Y. Co., 609 F.3d 56, 62 (2d Cir. 2010) (citation omitted).

Ippolitov's state law claims meet this standard and are preempted by ERISA. They all relate to MassMutual, Fastener, and

Hinkle's alleged mismanagement of an ERISA plan and all seek to recover losses suffered by the Plan. Ippolitov's common law claims are therefore "nothing more than an alternative theory of recovery for conduct actionable under ERISA and as such [are] preempted by ERISA." LoPresti v. Terwilliger, 126 F.3d 34, 41 (2d Cir. 1997) (citation omitted).

In her opposition to these motions to dismiss, Ippolitov "does not dispute that her state law claims would be preempted if the Fastener Plan is found to be governed under ERISA." Ippolitov argues instead that her state common law claims should survive as a form of arguing in the alternative, in case it is revealed that no ERISA plan actually existed. This is not how ERISA preemption works. Where "the existence of a pension plan is a critical factor in establishing liability," a state cause of action relates "to the essence of the pension plan itself" and is therefore preempted. Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 139-40 (1990). It may at some point emerge that no plan ever existed, and that Fastener and Hinkle lied to their employees in saying that it did. This scenario is far outside the scope of the allegations in the Amended Complaint. The Amended Complaint as currently drafted is entirely reliant on a theory of the case that puts the ERISA Plan front and center and therefore lies at the heart of ERISA's enforcement scheme.[2] The

[2] Indeed, Ippolitov purports to represent a class composed of beneficiaries of the Plan.

Court must decide the motions to dismiss on the basis of the Amended Complaint as it currently stands, and on that basis its state law claims are preempted.

CONCLUSION

MassMutual's October 11 motion to dismiss is granted in its entirety. The October 11 motion to dismiss by Fastener and Hinkle is denied as to Ippolitov's ERISA claims and granted in all other respects.

Dated: New York, New York
December 12, 2013

Denise Cote
DENISE COTE
United States District Judge